The TIMES MIRROR COMPANY; Petitioner–Appellant,

and

The Copley Press, Inc., Appellant,

v.

UNITED STATES of America, Real Party in Interest–Appellee.

The TIMES MIRROR COMPANY; the Copley Press, Inc., Petitioners,

v.

UNITED STATES DISTRICT COURT FOR the CENTRAL DISTRICT OF CALIFORNIA; United States District Court for the Southern District of California, Respondents,

United States of America; Doe Parties, Real Parties in Interest.

The TIMES MIRROR COMPANY; The Copley Press, Inc., Appellants,

v.

UNITED STATES of America, Real Party in Interest–Appellee.

CHANNEL 39, KCST–TV, Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 88–6278, 88–7291, 88–6279 and 88–6280.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 5, 1988.

Decided April 18, 1989.

As Amended on Denial of Rehearing and Rehearing En Banc July 24, 1989.

Rex S. Heinke, Gibson, Dunn & Crutcher, William A. Niese and Glen A. Smith, The Times Mirror Co., Los Angeles, Cal., Harold W. Fuson, Jr., The Copley Press, Inc., La Jolla, Cal., Judith L. Fanshaw, Wahrenbrock & Fanshaw, La Mesa, Cal., for appellants-petitioners.

Robert A. Philipson, Cutler and Cutler, Los Angeles, Cal., George L. O'Connell, Miller & O'Connell, Inc., Los Angeles, Cal., Randall J. Turk, Miller, Cassidy, Larroca & Lewin, Mark H. Tuohey, III, Pierson, Ball & Dowd, Barry William Levine, Dickstein, Shapiro & Morin, Robert F. Muse, Stein, Mitchell & Mezines, James F. Hibey, Verner, Liipfert, Bernhard, McPherson & Hand, Washington, D.C., Vincent J. Marella, Bird, Marella, Boxer, Wolpert & Matz, Bert H. Deixler, McCambridge, Deixler & Marmaro, Los Angeles, Cal., for Doe parties.

Joseph J. Aronica, Asst. U.S. Atty., Alexandria, Va., George Hardy, Asst. U.S. Atty., San Diego, Cal., Steven E. Zipperstein, Asst. U.S. Atty., Los Angeles, Cal., Maury S. Epner, Dept. of Justice, Washington, D.C., for U.S.

Before SCHROEDER, ALARCON and NORRIS, Circuit Judges.

WILLIAM A. NORRIS, Circuit Judge:

In these consolidated appeals we consider whether the public has a qualified right of access to search warrants and supporting affidavits relating to an investigation which is ongoing and before any indictments have been returned. Appellants (the Times Mirror Company, KCST–TV Channel 39, and the Copley Press) claim they have a qualified right of access, derived from the First Amendment, the common law and Fed.R.Crim.P. 41(g)[1], to search warrant materials associated with Operation Ill-Wind, a nationwide FBI investigation of corruption and fraud in the procurement of military weapons systems. The United States District Courts for the Central and Southern Districts of California both rejected these claims. We affirm, holding that members of the public have no right of access to search warrant materials while a pre-indictment investigation is under way. We need not and do not decide at this time the question whether the public has a First Amendment right of access to warrant materials after an investigation is concluded or after indictments have been returned.

I

BACKGROUND

This dispute arises out of a far-ranging investigation, originating in the Eastern District of Virginia, into fraud and bribery in the defense contracting industry. In June 1988, agents of the Federal Bureau of Investigations applied to United States District Courts around the country for various search warrants, four of which were issued and executed in the Central District of California and one of which was issued and executed in the Southern District of California. To establish probable cause for the warrants, the agents submitted detailed affidavits. Following execution of each warrant, the agents also prepared inventories of the items seized, in accordance with Fed.R.Crim.P. 41(d). The search warrants and inventories were then returned to magistrates in the districts where the warrants were served.

The government sought, and magistrates in the Central and Southern Districts of California initially granted, orders maintaining the search warrants, supporting affidavits and inventories under indefinite seal. Appellants then filed these original

1. Appellants acknowledge that the public's right of access to the warrant materials would not be absolute under any of these theories. Even when the public enjoys a First Amendment right of access to a particular proceeding, the public still can be denied access if closure "is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest." *Press–Enterprise Co. v. Superior Court,* 464 U.S. 501, 509–10, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) (*"Press–Enterprise I"*) (quoting *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 606–07, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982). Rights of access grounded in the common law can be overridden by the same showing of a compelling governmental interest. *See CBS, Inc. v. United States Dist. Court,* 765 F.2d 823, 825 (9th Cir.1985).

actions in the United States District Courts for the Central and Southern Districts of California, seeking court orders to unseal the warrant materials. In the Central District action, a magistrate granted appellants' request and ordered the search documents unsealed. After securing a stay, the government appealed the magistrate's order to the district court. District Judge Kenyon reversed the magistrate's order on the ground that "the public's interest in a complete and uninhibited investigation strongly outweighs [the public's] need for or right of access to the search warrant affidavits at this time." Excerpt of Record (E.R.) at 480.

In the Southern District action, the magistrate denied the motion to unseal the search papers. Appellants then appealed the denial to the district court. Chief Judge Thompson affirmed the magistrate's order denying relief, ruling that appellants had no First Amendment right of access to pre-indictment warrant materials and that the common law right of access to judicial documents was trumped in this case by important governmental interests in maintaining the secrecy of the warrant materials during the investigation. *Id.* at 992.

## II

### JURISDICTION

■ This court's jurisdiction to review the district courts' orders denying access rests on 28 U.S.C. § 1291. Section 1291 provides appellate review for all "final decisions of the district courts of the United States." Each of the orders denying access "finally adjudicated the matter presented to the district court and was not a mere component of a different proceeding." *Re Sealed Affidavit(s) to Search Warrants,* 600 F.2d 1256, 1257 n. 2 (9th Cir.1979) (per curiam). As the Third Circuit noted in *Re New York Times Co.,* 828 F.2d 110, 113 (2d Cir.1987) *cert. denied,* —— U.S. ——, 108 S.Ct. 1272, 99 L.Ed.2d 483 (1988), because "the claims could have been

treated by the district court as a new civil case, as opposed to an intervention in [a] pending criminal case," each order by the district court resolved all issues that were raised in the proceeding, making the order a final decision. *Accord: Re Search Warrant for Secretarial Area Outside Office of Thomas Gunn, McDonnell Douglas Corp.,* 855 F.2d 569, 572 (8th Cir.1988) (*"McDonnell Douglas Corp."*); *Re Application of National Broadcasting Co., Inc.,* 635 F.2d 945, 949 n. 2 (2d Cir.1980).[2]

## III

### STANDARD OF REVIEW

The question whether the public has a qualified First Amendment right of access to search warrants and supporting affidavits during the pre-indictment stage of a criminal investigation is a question of law, which we review *de novo.* *United States v. McConney,* 728 F.2d 1195, 1201 (9th Cir. en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). Similarly, the questions whether the common law provides the public with a qualified right of access to warrant materials and whether Fed.R.Crim.P. 41(g) embodies a statutory right of access are also questions of law, requiring *de novo* review.

## IV

### THE FIRST AMENDMENT

■ Appellants assert that the First Amendment guarantees the public a qualified right of access to search warrants and supporting affidavits at the pre-indictment stage of an ongoing criminal investigation.[3] Appellants argue that warrant proceedings are "criminal proceedings," and that therefore the public has a right of access to all documents relating to those proceedings unless there is a compelling state interest requiring closure. *See generally, Press-Enterprise Co. v. Superior Court,* 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) (*"Press-Enterprise II"*) (public has First Amendment right of access to transcript of

---

2. Had the appellants attempted to gain access to judicial documents in an underlying criminal proceeding, (as distinguished from a warrant proceeding, see *infra*), they would have had to proceed in this court by petition for writ of mandamus. *United States v. Schlette,* 842 F.2d 1574, 1576 (9th Cir.1988); *Associated Press v. United States Dist. Court,* 705 F.2d 1143, 1147 (9th Cir.1983).

3. The question whether the public has a constitutional right of access to warrant materials at this or any other stage of a criminal investiga-

tion or prosecution is one of first impression in this circuit. While we have held that district courts have the inherent power to seal search warrant affidavits, *Re Sealed Affidavit(s) to Search Warrants,* 600 F.2d 1256, 1257 (9th Cir. 1979) (per curiam), we cautioned in that case that the district courts could exercise that power only within "certain constitutional and other limitations." In *Sealed Affidavit(s)* we were not required to define precisely the parameters of those constitutional limitations.

preliminary hearing in criminal prosecution); *CBS, Inc. v. United States Dist. Court,* 765 F.2d 823 (9th Cir.1985) (public has First Amendment right of access to criminal proceedings and documents filed therein). They contend that the justifications for granting the public access to criminal trials apply with equal force to warrant proceedings. Public access to warrant proceedings, like public access to criminal trials, appellants claim, would ensure active participation of the individual citizen in "our republican system of self-government," *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 604, 102 S.Ct. 2613, 2619, 73 L.Ed.2d 248 (1982) (citations omitted), serve as a check upon possible abuses of judicial power, and "enhance the quality and safeguard the integrity of the fact-finding process." 457 U.S. at 606, 102 S.Ct. at 2619 (footnote omitted). Appellants conclude that because the public would stand to benefit in these ways, the First Amendment requires warrant proceedings and materials to be open to public inspection, unless the government can demonstrate that compelling interests necessitate closure.

Appellants essentially argue that any time self-governance or the integrity of the criminal fact-finding process may be served by opening a judicial proceeding and its documents, the First Amendment mandates opening them to the public. Were we to accept this argument, few, if any, judicial proceedings would remain closed. Every judicial proceeding, indeed every governmental process, arguably benefits from public scrutiny to some degree, in that openness leads to a better-informed citizenry and tends to deter government officials from abusing the powers of government. However, complete openness would undermine important values that are served by keeping some proceedings closed to the public. Openness may, for example, frustrate criminal investigations and thereby jeopardize the integrity of the search for truth that is so critical to the fair adminis-

tration of justice. Traditionally, for example, grand jury proceedings have been kept secret even though they are judicial proceedings which are closely related to the criminal fact-finding process. *See Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 218, 99 S.Ct. 1667, 1672, 60 L.Ed.2d 156 (1979). Certainly, the public's interest in self-governance and prevention of abuse of official power would be served to some degree if grand jury proceedings were opened. The same might be said of jury deliberations and the internal communications of this court. But because the integrity and independence of these proceedings are threatened by public disclosures, claims of "improved self-governance" and "the promotion of fairness" cannot be used as an incantation to open these proceedings to the public. Nor will the mere recitation of these interests open a particular proceeding merely because it is in some way integral to our criminal justice system.

For these reasons, the Supreme Court has implicitly recognized that the public has no right of access to a particular proceeding without first establishing that the benefits of opening the proceedings outweigh the costs to the public. Courts are required to examine whether 1) historical experience counsels in favor of recognizing a qualified First Amendment right of access to the proceeding and 2) whether public access would play a "significant positive role in the functioning of the particular process in question." *Press–Enterprise II,* 478 U.S. at 8, 106 S.Ct. at 2740. We turn, then, to the question whether these related "considerations of experience and logic" cut in favor of a First Amendment right of access to warrant materials while an investigation is ongoing but before an indictment has been returned.[4] *Id.* at 9, 106 S.Ct. at 2741.

### A

We know of no historical tradition of public access to warrant proceedings.[5] Indeed, our review of the history of the war-

---

**4.** Although *Press–Enterprise II* concerned access to judicial *proceedings* themselves, we have previously indicated that the two-part analysis applies as well to *documents* generated as part of a judicial proceeding. *Seattle Times Co. v. U.S. Dist. Court,* 845 F.2d 1513, 1515–16 (9th Cir. 1988); *cf. United States v. Brooklier,* 685 F.2d 1162, 1172 (9th Cir.1982).

**5.** Appellants' sole argument of a history of openness of warrant proceedings is based upon Fed. R.Crim.P. 41(g), which requires the magistrate to file the search warrant return, inventory, and

all "other papers in connection therewith" with the clerk of the district court at some point after the warrant is returned. We hold in part VI, *infra,* that Rule 41(g) does not create a statutory right of access to search warrant materials. At this time, we need only point out that Rule 41(g)'s requirement that returned warrant materials be filed with the district court does not establish a tradition of open warrant proceedings and materials because Rule 41(g) does not require that the warrant materials when filed be open to public inspection.

rant process in this country indicates that the issuance of search warrants has traditionally been carried out in secret. Normally a search warrant is issued after an *ex parte* application by the government and an *in camera* consideration by a judge or magistrate. *McDonnell Douglas Corp.,* 855 F.2d at 573. The practice of secrecy in warrant proceedings was recognized by the Supreme Court in *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1977), where the Court considered whether a defendant has a constitutional right to make a post-indictment challenge to the truthfulness of an affidavit submitted in support of a warrant. In deciding that the defendant should have that right, the Court noted that it is impossible for the defendant to challenge the contents of the affidavits before the warrant is executed because the "proceeding is necessarily *ex parte,* since the subject of the search cannot be tipped off to the application for a warrant lest he destroy or remove evidence." *Id.* at 169, 98 S.Ct. at 2683. The secrecy of warrant proceedings was also an important factor in the Court's decision in *United States v. United States Dist. Court,* 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972), requiring the government to comply with the warrant provision of the Fourth Amendment when engaging in domestic intelligence gathering activity. Although the Court recognized the importance of keeping domestic investigations secret, the Court found that requiring the government to obtain a warrant posed no threat to secrecy, since the warrant proceeding is not "public." *Id.* at 321, 92 S.Ct. at 2138.

The government acknowledges that while warrant proceedings have historically been closed to the public, most search warrant materials routinely become public after the warrant is served. If the government does not request a sealing order and the magistrate files the returned warrant materials with the clerk of the district court, as required by Fed.R.Crim.P. 41(g), the warrant materials become public records like any other document filed with the court. This general availability, however, does not undermine the government's claim that there is no history of unrestrict-

ed access to warrant materials. As the government points out, it has always been able to restrict access to warrant materials by requesting a sealing order, which courts have granted freely upon a showing that a given criminal investigation requires secrecy. As the Supreme Court observed in *United States Dist. Court,* "[t]he investigation of criminal activity has long involved imparting sensitive information to judicial officers who have respected the confidentialities involved." 402 U.S. at 320–21, 92 S.Ct. at 2138. The process of disclosing information to a neutral magistrate to obtain a search warrant, therefore, has always been considered an extension of the criminal investigation itself. It follows that the information disclosed to the magistrate in support of the warrant request is entitled to the same confidentiality accorded other aspects of the criminal investigation. Both the magistrate in granting the original sealing order and the district court in reviewing such orders have necessarily been highly deferential to the government's determination that a given investigation requires secrecy and that warrant materials be kept under seal.[6]

In sum, we find no historical tradition of open search warrant proceedings and materials. Historical experience, which counsels in favor of finding a First Amendment right of access to the criminal trial, *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980), to voir dire, *Press–Enterprise Co. I,* 464 U.S. 501, 104 S.Ct. 819, and to preliminary hearings, *Press–Enterprise II,* 478 U.S. 1, 106 S.Ct. 2735, furnishes no support for the claimed right of access to warrant proceedings in the instant cases. On the contrary, the experience of history implies a judgment that warrant proceedings and materials should not be accessible to the public, at least while a pre-indictment investigation is still ongoing as in these cases.

**B**

The second factor relevant to the First Amendment right of access inquiry is whether public access would play a "signif-

---

**6.** In refusing to unseal the warrant materials below, Judge Kenyon expressed understandable concern about disclosing the nature and scope of an ongoing criminal investigation. Judge Thompson shared those concerns, finding that the government's interest in completing its criminal investigation far outweighed the public's interest in obtaining the warrant materials while the investigation was ongoing.

icant positive role in the functioning" of the proceeding. *Press–Enterprise II*, 478 U.S. at 13–14, 106 S.Ct. at 2743. Appellants marshal three arguments in support of their claim that opening the warrant process would serve a significant positive role in warrant proceedings. They argue that open warrant proceedings are essential to self-government because observation of all aspects of the judicial process promotes open discussion of the process and permits the public to serve as a check on possible governmental abuses. Second, appellants argue that public scrutiny of warrant proceedings enhances the "quality and safeguards the integrity of the fact-finding process," as is true with public scrutiny of the criminal trial. *Globe Newspaper*, 457 U.S. at 606, 102 S.Ct. at 2619. Finally, appellants argue that open warrant proceedings and access to warrant materials would have the same "community therapeutic value" as open criminal trials, by serving as an outlet for the sense of outrage, insecurity and need for retribution that a community feels when a crime occurs.

While these interests are clearly legitimate, we believe they are more than outweighed by the damage to the criminal investigatory process that could result from open warrant proceedings. In our view, public access would hinder, rather than facilitate, the warrant process and the government's ability to conduct criminal investigations. In this regard, warrant proceedings are indistinguishable from grand jury proceedings, which the Supreme Court has identified as the "classic example" of the type of "government operation[ ] that would be totally frustrated if conducted openly ... [since] 'the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings.'" *Press–Enterprise II*, 478 U.S. at 9, 106 S.Ct. at 2741 (quoting *Douglas Oil Co.*, 441 U.S. at 218, 99 S.Ct. at 1672).

The Supreme Court has articulated several reasons why secrecy is imperative in grand jury proceedings:

First, if pre-indictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment.

*Douglas Oil*, 441 U.S. at 219, 99 S.Ct. at 1673.[7] In other words, the secrecy of grand jury proceedings is maintained in large part to avoid jeopardizing the criminal investigation of which the grand jury is an integral part.

We believe that secrecy is no less important to the process of investigating crime for the purpose of obtaining evidence to present to a grand jury. First, and most obviously, if the warrant proceeding itself were open to the public, there would be the obvious risk that the subject of the search warrant would learn of its existence and destroy evidence of criminal activity before the warrant could be executed. Additionally, if the proceeding remained closed but the supporting affidavits were made public when the investigation was still ongoing, persons identified as being under suspicion of criminal activity might destroy evidence, coordinate their stories before testifying, or even flee the jurisdiction.

We are not alone in our view that search warrant proceedings, like grand jury proceedings, require secrecy. The reasons why the policy behind grand jury secrecy apply with equal force to warrant proceedings was ably expressed by Judge Harvey, in denying a request for access to Operation Ill–Wind warrant materials filed in the United States District Court for Maryland:

If proceedings before and related to evidence presented to a grand jury (includ-

---

7. In *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681–82 n. 6, 78 S.Ct. 983, 986, n. 6, 2 L.Ed.2d 1077 (1958), the Supreme Court also approved of the reasons for grand jury secrecy given in *United States v. Rose*, 215 F.2d 617, 628–29 (3rd Cir.1954):

(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before [the] grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes....

ing subpoenas, documents and even hearings before the court for the immunization of witnesses) can be kept secret, *a fortiori*, matters relating to a criminal investigation leading to the development of evidence to be presented to a grand jury may also be kept secret. Indeed, search warrant proceedings are one step back from the convening of a grand jury. *Re Sealed Search Warrants and Affidavits*, Criminal No. H–88–0427, oral opinion at 12–13 (D.Md. August 30, 1988). *See also In re The Baltimore Sun Co.*, Civil No. R–88–1789, oral opinion (D.Md. July 12, 1988); *Contra In Re Search Warrant for Second Floor Bedroom*, 489 F.Supp. 207, 211 (D.R.I.1980) (holding that the rule of grand jury secrecy extends only to the grand jury proceedings themselves, not to the subject matter of the investigation or to any material prepared prior to a grand jury proceeding, including search warrant affidavits).

For these reasons, we hold that the First Amendment does not establish a qualified right of access to search warrant proceedings and materials while a pre-indictment investigation is still ongoing. Our position is reinforced by still another factor, namely the privacy interests of the individuals identified in the warrants and supporting affidavits. The Supreme Court has acknowledged that one of the reasons for maintaining the secrecy of grand jury proceedings is to "assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule." *Douglas Oil*, 441 U.S. at 219, 99 S.Ct. at 1673; *see also United States v. Procter & Gamble Co.*, 356 U.S. 677, 681–82 n. 6, 78 S.Ct. 983, 986 n. 6, 2 L.Ed.2d 1077 (1958) (need to protect innocent accused from disclosure of the fact that he has been under investigation). This concern applies with equal force here.

Other courts have also taken account of the privacy rights of individuals when considering access requests to judicial documents. *See e.g., United States v. Smith*, 776 F.2d 1104 (3rd Cir.1985); *U.S. v. Schlette*, 842 F.2d 1574, 1581 (9th Cir.1988). In *Smith*, the press sought access to a bill of particulars, which named the unindicted members of a criminal conspiracy. Upholding the district court's decision to seal that portion of the bill of particulars which contained the names of the unindicted co-conspirators, the Court reasoned as follows:

If published, the sealed list will communicate to the general public that the named individuals, in the opinion of the chief federal law enforcement official of the District, are guilty, or may be guilty, of a felony involving breaches of the public trust. This broad brush assertion will be unaccompanied by any facts providing a context for evaluating the basis for the United States Attorney's opinion with respect to any given individual. When one adds to this that the United States Attorney's opinion was formed on the basis of an investigation that had not yet reached the point where he was willing to make a decision on whether to prosecute, it becomes apparent that the risk of serious injury to innocent third parties is a grave one. Finally, as the trial judge noted, the named individuals have not been indicted and, accordingly, will not have an opportunity to prove their innocence in a trial. This means that the clearly predictable injuries to the reputations of the named individuals is [sic] likely to be irreparable.

776 F.2d at 1113–14. Finding that these risks seriously undermined the social utility of releasing the names, the Third Circuit affirmed the district court's order denying access to the sealed portion of the bill of particulars. *Id.* at 1115.

The risks identified in *Smith* are also present when search warrant materials are made public. Persons who prove to be innocent are frequently the subjects of government investigations. Like a bill of particulars, a search warrant affidavit may supply only the barest details of the government's reasons for believing that an individual may be engaging in criminal activity. Nonetheless, the issuance of a warrant—even on this minimal information—may indicate to the public that government officials have reason to believe that persons named in the search warrant have engaged in criminal activity. Moreover, persons named in the warrant papers will have no forum in which to exonerate themselves if the warrant materials are made public before indictments are returned. Thus, possible injury to privacy interests is another factor weighing against public access to warrant materials during the pre-indictment stage of an investigation.

## C

We are mindful that the Eighth Circuit has recognized a qualified First Amendment right of access to warrant materials. *McDonnell Douglas Corp.*, 855 F.2d at 573. In *McDonnell Douglas Corp.*, the Eighth Circuit considered an access request by Pulitzer Publishing Company for Operation Ill–Wind search warrant materials. Two members of the three-judge panel, Judges McMillian and Heaney, agreed that the public has a qualified First Amendment right to documents filed in support of the search warrant applications, even though a pre-indictment investigation is ongoing.[8] Judge McMillian, writing for himself and Judge Heaney on the First Amendment question, observed that the public probably could not claim a First Amendment right of access to warrant *proceedings* because "the very objective of the search warrant process, the seizure of evidence of crime, would be frustrated" by public access. 855 F.2d at 573. But, he concluded, the public did have a First Amendment right of access to "*documents filed* in support of search warrant applications." *Id.* (emphasis added). Judge McMillian gave three reasons for finding a First Amendment right of access to the warrant materials. First, search warrant applications are routinely filed with the district court without seal. Second, "public access to documents filed in support of search warrants is important to the public's understanding of the function and operation of the judicial process and the criminal justice system and may operate as a curb on prosecutorial or judicial misconduct." *Id.* Finally, because "[s]earch warrants are at the center of pre-trial suppression hearings, and suppression issues often determine the outcome of criminal prosecutions," the majority found no reason to treat search warrant materials differently from suppression hearing materials, which are open to the public. *Id.*

With all due respect, we cannot agree with the Eighth Circuit's reasoning. The first ground for recognizing a right of access—the fact that search warrants and supporting affidavits are often filed with the district court without seal—merely describes a practice in cases where the government presumably believes secrecy is unnecessary; it does not establish that the First Amendment requires that warrant materials be filed without seal.[9] We must also disagree with the Eighth Circuit's second ground—that openness would improve the functioning of the warrant process. As we have explained, it is unquestioned that open warrant proceedings might "operate as a curb on prosecutorial or judicial misconduct." *Id.* at 573. Yet, whatever the social utility of open warrant proceedings and materials while a pre-indictment investigation is ongoing, we believe it would be outweighed by the substantial burden openness would impose on government investigations. The warrant process—which Judge McMillian acknowledges would be jeopardized if warrant *proceedings* were conducted openly—would be equally threatened if the *information disclosed during the proceeding* were open to public scrutiny, since in either case disclosure could frustrate the government's efforts to investigate criminal activity. Finally, the third ground advanced by the Eighth Circuit cuts too broadly. We see no justification for opening warrant materials simply because those materials at some point may become the subject of a suppression hearing, which may in turn determine the outcome of a criminal prosecution. The same may be said for evidence presented to a grand jury, yet the public has no right of access to grand jury evidence. While warrant materials may, in due course, be disclosed to a defendant so she can challenge the constitutionality of the search at a suppression hearing to which the public has a First

---

8. A majority of the court, however, rejected Pulitzer Publishing Company's request to unseal the documents. Judge Bowman, who declined to reach the First Amendment issue, joined Judge McMillian in holding that the government had made a compelling showing that the particular affidavits in question should remain under seal. Judge Heaney joined Judge McMillian's analysis of the First Amendment right of access to warrant materials, but dissented from the result because of his determination that the government had failed to make a showing of a compelling need to keep the materials secret at that stage of the Ill–Wind investigation. Our

decision that no qualified right of access exists relieves the government of the considerable burden of responding on a case-by-case basis to actions such as these brought during the middle of an ongoing investigation. In contrast, the approach taken by the Eighth Circuit in *McDonnell Douglas Corp.* requires the government to carry the burden of demonstrating on the facts of each case a compelling need for secrecy.

9. *See* discussion *infra* at 1219–20.

Amendment right of access, it does not follow that the public should necessarily have access to the information before that time.[10]

In sum, we find no First Amendment right of access to search warrant proceedings and materials when an investigation is ongoing but before indictments have been returned. We find no history of openness at this stage in the warrant proceedings which might argue in favor of a constitutionally protected right of access. While public access would doubtless have some positive effect by increasing the flow of information to the public about the workings of the government and by deterring judicial and law enforcement officers from abusing the warrant process, the incremental value in public access is slight compared to the government's interest in secrecy at this stage of the investigation. This is particularly true given the other mechanisms—including suppression motions and civil actions for violation of constitutional rights—that are already in place to deter governmental abuses of the warrant process.[11] In addition, we believe that significant privacy interests would be jeopardized if the public had access to warrant materials before indictments are returned. Accordingly, we hold that members of the public have no First Amendment right to attend warrant proceedings, or to obtain the documents relating to those proceedings, while the investigation is ongoing but before indictments have been returned. As noted, we need not and do not decide at this time the question whether the public has a First Amendment right of access to warrant materials after an investigation is concluded or after indictments have been returned.

**V**

## THE COMMON LAW

■ Appellants argue that even if they do not have a qualified right of access to the warrant materials under the First Amendment, the common law secures such a right. The Supreme Court has recognized that the public has a right, founded in the common law, "to inspect and copy *public* records and documents, including judicial records and documents." *Nixon v. Warner Communications Inc.*, 435 U.S. 589, 598, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570 (1978) (emphasis added). While the Court has not precisely delineated the contours of that right, *id.* at 599, 98 S.Ct. at 1313, it has made clear that "the right to inspect and copy judicial records is not absolute." *Id.* at 598, 98 S.Ct. at 1312.

Since *Warner Communications* was decided, our circuit has had several occasions to consider access requests based on an alleged common law right of access to judicial documents. In *Re Special Grand Jury (For Anchorage, Alaska)*, 674 F.2d 778 (9th Cir.1982), the parties sought access to ministerial records of the grand jury, asserting a common law right of access to all judicial records. We held that the public had a common law right of access to the ministerial records, but that the access right extended only to those portions of the ministerial records which did not compromise the long-standing rule of secrecy of the grand jury. *Id.* at 781. We reasoned that public access to judicial records, while important, had to be tempered by the rule of secrecy because of the well-recognized policies behind that rule.

**10.** There are several exceptions to the general rule of secrecy surrounding grand jury proceedings. Disclosure of otherwise confidential materials is permitted by a court "at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury." Fed.R.Crim.P. 6(e)(3)(C)(ii).

**11.** We recognize that the Supreme Court has noted that there must be some process by which society can monitor law enforcement officials' decisions to search or seize property beyond relying on the judgment of the neutral detached

magistrate. *E.g. Franks v. Delaware*, 438 U.S. at 169, 98 S.Ct. at 2683; *Mapp v. Ohio*, 367 U.S. 643, 670, 81 S.Ct. 1684, 1699, 6 L.Ed.2d 1081 (1961) (Douglas, J., concurring). While we acknowledge that the public has a vital role to play in policing the government's use of the warrant process, we fail to see how the public can play such a role at this stage without risk of damage to the investigation. We leave for another day the question whether public scrutiny of warrant materials after an investigation is terminated or after an indictment is returned should serve as a means of monitoring the warrant process for potential abuses.

Thus, *Anchorage, Alaska* established one limitation on the common law right of access described in *Warner Communications*—there is no right of access to documents which have traditionally been kept secret for important policy reasons.

In *Associated Press v. United States Dist. Court,* 705 F.2d 1143 (9th Cir.1983), the press sought access to pretrial proceedings and documents, alleging a First Amendment right of access. We stated in dictum that "there can be little dispute that the press and public have historically had a common law right of access to most pretrial documents, [citing *Warner Communications,* 435 U.S. at 597–98, 98 S.Ct. at 1312]—though not to some, such as transcripts of grand jury proceedings." *Id.* at 1145. While we went on to hold that the public had a First Amendment right of access to most pretrial proceedings and documents, we did not suggest that the common law right of access extended to *all* pretrial documents. Indeed, as noted above, we expressly recognized that the public has no common law right to copy grand jury transcripts. *Id.*

■ Neither *Anchorage, Alaska* nor *Associated Press,* then, can be interpreted as recognizing a common law right of access to all judicial and quasi-judicial documents. On the contrary, each opinion recognized that the records of certain pretrial proceedings—such as the grand jury—are not accessible to the public under a common law theory. More importantly, neither *Anchorage, Alaska* nor *Associated Press*—nor any of the cases that have followed [12]—recognized a common law right of access to judicial records when there is neither a

12. See *CBS, Inc. v. United States Dist. Court,* 765 F.2d 823 (9th Cir.1985) (recognizing common law right of access to documents filed during post-conviction proceedings); *Valley Broadcasting Co. v. United States Dist. Court,* 798 F.2d 1289 (9th Cir.1986) (common law right of access to audiovisual exhibits introduced at trial); *Schlette,* 842 F.2d at 1576 (common law right of access to presentence reports).

13. In *Schlette* we noted that this showing—that disclosure would serve the ends of justice—was also required in the analogous situation when a party seeks sentencing memoranda which contain confidential grand jury information.

history of access nor an important public need justifying access. In *Schlette,* for example, we found a common law right of access despite the fact that presentence reports traditionally had been kept confidential by the courts only because the party seeking access was able to make a "threshold showing that disclosure would serve the ends of justice." 842 F.2d at 1581 (citing *Berry v. Department of Justice,* 733 F.2d 1343, 1352 (9th Cir.1984).[13]

Under this important public need or "ends of justice" standard, appellants' claim must be rejected. We believe this threshold requirement cannot be satisfied while a preindictment investigation is ongoing. As we explained in our discussion of appellants' First Amendment claim, the ends of justice would be frustrated, not served, if the public were allowed access to warrant materials in the midst of a preindictment investigation into suspected criminal activity.

## VI

### RULE 41(g)

■ Finally, appellants argue they are entitled to access to the warrant materials under Fed.R.Crim.P. 41(g).[14] Appellants urge that Rule 41(g), which requires the magistrate to file with the clerk of the district court the warrant, the return and all supporting documents, renders those documents " 'judicial records' to which a presumption of openness attaches." Appellants' Opening Brief at 18. Implicit in appellants' argument is the claim that Congress intended Rule 41(g) to give the public

*Schlette,* 842 F.2d at 1581 (citing *U.S. Industries, Inc. v. United States Dist. Court,* 345 F.2d 18, 21 (9th Cir.), *cert. denied,* 382 U.S. 814, 86 S.Ct. 32, 15 L.Ed.2d 62 (1965). Requiring this threshold showing seems even more appropriate in this case than in *Schlette* because of the many similarities between grand jury proceedings and warrant proceedings, especially with respect to their shared need for secrecy. We see no reason why this test, used for judicial documents that contain confidential grand jury information and for pre-sentence reports, should not also be used for access requests to warrant materials.

a right of access to warrant materials that is above and beyond any access right that may be secured by the Constitution or the common law. In effect, appellants contend that in enacting Rule 41(g), Congress intended to expand the public's rights of access to warrant materials beyond whatever is afforded by the Constitution or the common law.

We must reject appellants' Rule 41(g) argument. In our view, Congress adopted Rule 41(g) with no intention of expanding any rights of access which may otherwise exist under the First Amendment or the common law. On its face, Rule 41(g) does no more than require a magistrate to file search warrant papers with the Clerk of the District Court. Rule 41(g) is markedly different from Rule 6, the complex disclosure statute Congress enacted to provide for a statutory qualified right of access to grand jury materials.[15] Rule 6 contains provisions to guide the district court in various situations where Congress decided that the traditional rule of grand jury secrecy could be waived. Given the precision with which Congress delineated the rights of third parties and defendants to gain access to the confidential materials of the grand jury, we cannot believe that Congress intended the bare filing requirement of Rule 41(g) to create comparable rights to warrant materials. Indeed, Rule 41(g) places no time limit on when the warrant materials must be filed by the magistrate with the district court. *See United States v. Lewis*, 270 F.Supp. 807, 811 (S.D.N.Y. 1967), *aff'd* 392 F.2d 377 (2nd Cir.), *cert. denied*, 393 U.S. 891, 89 S.Ct. 212, 21 L.Ed.2d 170 (1968); *see also* C. Wright *Federal Practice and Procedure*, § 672 at 752 (2d ed.1982). Nothing in the language of the statute, then, suggests that Congress intended Rule 41(g) to create a right of access to warrant materials.

Nor do the Advisory Committee notes on Rule 41(g) contain any indication that the rule's purpose was to provide public access

to warrant materials. Had the Committee intended Rule 41(g) to expand the public's right of access beyond that already secured by the First Amendment or the common law, we would expect the legislative history of the rule to include some discussion of the need for public access. The Advisory Committee notes, however, contain only passing reference to Rule 41(g). There is no suggestion that the public was to be an intended beneficiary of the rule's filing requirement.

Appellants rely on *In re Search Warrant for Second Floor Bedroom*, 489 F.Supp. 207, 212 n. 1 (D.R.I 1980), in which a district court held that Rule 41(g) grants the public a right of access to warrant materials independent of any First Amendment or common law right. The court observed that while the primary beneficiary of the filing rule is the defendant—since it makes it possible for the defendant to gain access to the warrant materials if needed to support a suppression motion—there is "every reason to suppose that the Rule was adopted to benefit the public as well." *Id.*

We cannot accept the implication of *Second Floor Bedroom* that Rule 41(g), in itself, grants to the public an access right where none existed under either the First Amendment or the common law. Rule 41(g) merely provides for the orderly transfer of the warrant materials from the magistrate's records to those of the district court. By requiring that all the materials related to a warrant be assembled and lodged with the clerk of the district court, Rule 41(g) ensures that the materials will be in one location and in the custody of the clerk of the district court at the time that a suppression motion or a motion for return of property under Rule 41(e) is made. In sum, Rule 41(g) creates no new rights; it merely provides for the efficient and orderly maintenance of warrant materials.

---

**14.** Rule 41(g) provides:
    The federal magistrate before whom the warrant is returned shall attach to the warrant a copy of the return, inventory and all other

papers in connection therewith and shall file them with the clerk of the district court for the district in which the property was seized.

**15.** *See generally* Fed.R.Crim.P. 6(d)–(e)(6).

## VII

### CONCLUSION

The district courts' orders maintaining the warrant materials under indefinite seal are affirmed. The public has no qualified First Amendment right of access to warrant materials during the pre-indictment stage of an ongoing criminal investigation. Nor is the public entitled to access to the materials under either the common law or Fed.R.Crim.P. 41(g). Our holding is a narrow one. We do not decide whether the public has a right of access to warrant materials in either of the following situations: 1) an investigation has been terminated; or 2) an investigation is still ongoing, but an indictment has been returned.

AFFIRMED.