In the MATTER of the SEARCH OF 1993 JEEP GRAND CHEROKEE, LICENSE NO. PC69059 (DELAWARE), VIN 1J4GZ78Y3PC563912, REGISTERED TO 1ST PA CONSUMER SERVICES INC. c/o Thomas J. CAPANO.

In the Matter of the SEARCH OF 1993 CHEVROLET SUBURBAN VEHICLE, LICENSE NO. PC80895 (DELAWARE), VIN 116GNFKK1PJ323323, REGISTERED TO Thomas J. CAPANO and Kathleen M. Capano.

In the Matter of the SEARCH OF 2302 GRANT AVENUE, WILMINGTON, DELAWARE 19806

In the Matter of the SEARCH OF Thomas J. CAPANO for two vials of blood, 25 head hair samples and 25 pubic hair samples.

Nos. 96–91M, 96–92M, 96–93M, 96–102M.

United States District Court, D. Delaware.

Dec. 13, 1996.

Bartholomew J. Dalton, Brandt & Dalton, Wilmington, DE, Charles M. Oberly, III, Kathleen M. Jennings, Oberly, Jennings & Drexler, Wilmington, DE, for Thomas J. Capano.

Richard G. Elliot, Jr., Helen M. Richards, Richards, Layton & Finger, Wilmington, DE, for The News Journal Company and Phila-

delphia Newspapers, Inc.; Amy B. Ginensky, Robert C. Clothier, III, Dechert, Price & Rhoads, Philadelphia, PA, of counsel.

Gregory M. Sleet, United States Attorney, Colm F. Connolly, Assistant United States Attorney, and Richard G. Andrews, Assistant United States Attorney, United States Attorney's Office, Wilmington, DE, for U.S.

## MEMORANDUM OPINION

SUE L. ROBINSON, District Judge.

## I. INTRODUCTION

On November 1, 1996, the Magistrate Judge issued an order unsealing four search warrant affidavits in connection with the ongoing investigation into the disappearance of Anne Marie Fahey. Thomas J. Capano, the subject of the search warrants, has filed objections to the order. (D.I.32) The News Journal Company ("News Journal") and the Philadelphia Newspapers, Inc. ("PNI") (collectively referred to as "the media") and the government have filed responses to Mr. Capano's objections, to which Mr. Capano has replied. (D.I.35, 36, 37, 41) For the reasons that follow the court will deny Mr. Capano's request to preview the sealed materials before public disclosure and will otherwise affirm the order.

## II. BACKGROUND

The relevant facts are not in dispute. On June 28, 1996, Anne Marie Fahey was reported missing. Although the investigation into her disappearance was initiated by local authorities, currently local and federal authorities are conducting a joint kidnapping investigation. On July 30, 1996, three search warrants ("July Search Warrants") were authorized by the Magistrate Judge. On that same day, the Magistrate Judge granted the government's motion to seal the warrants, the supporting documents, and the motion to seal. On July 31, 1996, the warrants were executed upon the home of Mr. Capano and two of his vehicles. On August 7, 1996, the News Journal, in a letter to the Magistrate

Judge, asked to inspect the July Search Warrants, their supporting affidavits or testimony, and their returns. A copy of the letter was sent to Mr. Capano's counsel. On August 8, 1996, the government moved to unseal the motion and order to seal, but requested that the warrants, affidavits, and returns remain sealed. The Magistrate Judge granted the government's request. (D.I.4)

The media then filed motions to intervene and to unseal the July Search Warrants and accompanying affidavits.[1] (D.I. 5, 6, 7 and 10) Counsel for Mr. Capano was served with these motions. On August 16, 1996, the government applied for a fourth search warrant ("August Search Warrant") and requested that all documentation related to that warrant be sealed, which relief was granted by the Magistrate Judge. (D.I.(102M) 1) On August 23, 1996, the Magistrate Judge held a telephone conference with counsel for, the government, the media, and Mr. Capano. During the telephone conference, the Magistrate Judge granted the media's motion to intervene. Mr. Capano's counsel advised the Magistrate Judge that Mr. Capano would not intervene, file a response, or take a position regarding the media's motion to unseal.

Oral argument on the media's motion to unseal[2] occurred on September 4, 1996, with Mr. Capano's counsel attending. At the hearing, the government opposed the media's motion, citing the following four reasons: (1) disclosure would compromise the integrity of an ongoing investigation by revealing information about the nature, scope, and direction of the investigation; (2) disclosure might lead to the destruction and removal of evidence and tailoring of stories by witnesses friendly to the target of the investigation; (3) disclosure could make potential witnesses reluctant to come forward; and (4) disclosure would implicate the privacy interests of the subject of the warrants and individuals identified in the search warrant affidavits. (D.I. 16 at 28–29; D.I. 35 at 3)

On October, 11, 1996, the Magistrate Judge issued a Report and Recommendation

---

1. The News Journal filed a motion to intervene and unseal the three July search warrants on August 14, 1996. (D.I.5–7) PNI joined the News Journal's motions on August 21, 1996. (D.I.10)

2. Since the media had moved to intervene before the August Search Warrant was issued, oral argument addressed only the July Search Warrants. (D.I.16)

("Report") denying the media's motion to unseal the July Search Warrants. (D.I.16) In the Report, the Magistrate Judge held that there is no First Amendment right of access to preindictment warrants or supporting documents. (D.I. 16 at 19) The Magistrate Judge recognized a qualified common law right of access to preindictment search warrants and supporting documents. (D.I. 16 at 33) In determining whether to unseal the search warrants and supporting documents, the Magistrate Judge weighed the media's common law right of access against the government's asserted interests in keeping the documents sealed. In denying the media's motion to unseal, the Magistrate Judge recognized the government's investigative interests and the privacy interests of Mr. Capano and other witnesses.[3] More specifically, the Magistrate Judge asserted that disclosure of the warrant information "would expose the nature and scope of the Government's ongoing investigation and compromise law enforcement's ability to prosecute the person(s) responsible" because the investigation was still in its "nascent [preindictment] stage." (D.I. 16 at 36) The Magistrate Judge concluded that these particular circumstances "weigh heavily against granting access at this time." (D.I. 16 at 37) In reference to the government's assertions of individual privacy interests, the Magistrate Judge stated:

> No forum exists where Mr. Capano or others could respond to the conclusions or allegations contained within the affidavits, or the resultant inferences drawn therefrom. No opportunity for character rehabilitation is available. As stated previously, the probable cause sufficient to sustain a search warrant does not equate to evidence sufficient to indict. The mechanism of our criminal justice system to insure persons are convicted and punished for the

suspected commission of a crime is not through publication, but rather through an unbiased criminal trial in a court of law. This Court through disclosure of warrant information, should not be used to unnecessarily jeopardize privacy and reputational interests.

(D.I. 16 at 39) The media and the government filed objections to the Magistrate Judge's Report and these objections were served on Mr. Capano. (D.I.18, 19, 23)

On October 28, 1996, Mr. Capano filed, under seal, a motion to produce the affidavits for the July Search Warrants and the August Search Warrant (collectively referred to as the "Four Search Warrants"). (D.I. 20–22; D.I. (102M) 4–6) In his motion to produce the affidavits for the Four Search Warrants, Mr. Capano argued that he is entitled to preview the affidavits so he can decide whether "to challenge the lawfulness of the searches and seizures, to seek the return of his property under Fed.R.Crim.P. 41(e) and to bring civil litigation pursuant to *Bivens*. . . ."[4] (D.I. 22 at 17) Mr. Capano sought to seal his motion to produce in order to "protect his privacy rights and [ ] avoid any further publicity." (D.I.20, ¶ 3)

On October 29, 1996, the government moved to unseal the Four Search Warrants, the supporting affidavits, and returns on the grounds that disclosure of the information in the affidavits would no longer jeopardize its investigation.[5] (D.I. 24; D.I. (102M) 7; D.I. 35 at 5 and 7) In this regard, the government noted that Mr. Capano had already learned the identity of witnesses and the nature and scope of the investigation. (D.I.24) Mr. Capano's counsel sent the Magistrate Judge a letter explaining that Mr. Capano could not take a position regarding the government's motion to unseal until he reviewed the affidavits. (D.I.32, Ex. A)

On October 30, 1996, the Magistrate Judge held a hearing on Mr. Capano's motion to seal the motion to produce and the govern-

---

**3.** The court notes that Mr. Capano had not intervened at that point and that it was the government which raised individual privacy interests as a basis for nondisclosure.

**4.** *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (holding that

federal officers may be sued for money damages for their alleged violation of a plaintiff's Fourth Amendment rights).

**5.** Thus mooting the objections filed by the government and the media to the October 11, 1996 Report and Recommendation.

ment's motion to unseal the Four Search Warrants and related documents. (D.I. 42 at 4 and 6) In attendance at the hearing were counsel for the government, the media, Mr. Capano, and the Fahey family.[6]

During the hearing, the Magistrate Judge ruled that Mr. Capano's motions to seal and to produce the Four Search Warrants constituted a motion to intervene. (D.I. 42. at 7) In response to a question from the Magistrate Judge, Mr. Capano's counsel confirmed that the motion to seal was withdrawn. (D.I. 42 at 8–9) Mr. Capano's counsel argued that Mr. Capano's motion to produce the affidavits of the Four Search Warrants was a "totally separate motion which has no bearing on [the media's] interests." (D.I. 42 at 10–11) The Magistrate Judge nevertheless ordered that Mr. Capano's motion to produce be distributed to the government and the media. (D.I. 42 at 12–13)

In addressing the government's motion to unseal, Mr. Capano's counsel asserted that Mr. Capano's privacy interests were implicated in unsealing the Four Search Warrants and accompanying affidavits because disclosure would pose a danger to Mr. Capano's physical safety, cause further devastation to his personal and family life, and further injure his reputation. (D.I. 29 at 12; D.I. 42 at 19)

On November 1, 1996, the Magistrate Judge issued an order unsealing the Four Search Warrants, supporting affidavits, and returns in redacted form. (D.I.29) In the order, the Magistrate Judge assumed that Mr. Capano had standing to assert his privacy interests in response to the government's motion to unseal. (D.I. 29 at 9) The Magistrate Judge concluded that the media's common law right of access outweighed Mr. Capano's asserted privacy interests, in part because "Capano's identity has never been secret" and that "substantial injury ha[d] al-

ready occurred, even before the federal investigation began." (D.I. 29 at 13–14). In releasing the documents, the Magistrate Judge exercised her discretion in ordering the redaction of witnesses' telephone numbers and Mr. Capano's private account numbers. (D.I. 29 at 16) The Magistrate Judge also denied as moot Mr. Capano's motion to produce the search warrant affidavits. (D.I. 29 at 18) The order was stayed pending appeal.

## III. DISCUSSION

■ Mr. Capano has asserted the following objections to the November 1, 1996 order:[7]

1) The Magistrate [Judge] improperly addressed Capano's Motion to Produce Search Warrant Affidavits in open court. Capano's Motion to Produce Search Warrant Affidavits and Memorandum of Law in support thereof was filed under seal on October 28, 1996.

2) The Magistrate [Judge] misstated Capano's position with regard to his right of access to the sealed materials. As discussed more fully below, Capano has a right to review the search warrant affidavits before public disclosure.

3) The Magistrate [Judge] erroneously determined that Capano's Motion to Produce Search Warrant Affidavits was moot. Capano's Motion to Produce Search Warrant Affidavits should be considered by the Court and ruled upon by separate decision.

4) The Magistrate [Judge] failed to properly consider Capano's privacy interests in response to the United States' ("Government") Motion to Unseal Search Warrant Affidavits filed on October 29, 1996. Specifically, the Magistrate [Judge] declined to determine whether Capano had standing to raise privacy and reputational interests.

6. During the hearing, the Fahey family, through counsel, advised the Magistrate Judge that they intended to intervene. (D.I. 42 at 15–16) On that same day, the Fahey family filed motions to unseal the judicial records relating to the Four Search Warrants. (D.I. 27 and 28; D.I. (102M) 9 and 10) Because the Magistrate Judge ultimately ruled that the Four Search Warrants should be unsealed, she denied these motions as moot. (D.I. 30; D.I. (102M) 12)

7. The court finds that Mr. Capano has standing to assert his opposition to public disclosure, given the fact that he and his property are the subjects of the search warrants. *See Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 599 n. 11, 98 S.Ct. 1306, 1313 n. 11, 55 L.Ed.2d 570 (1978).

5) The Magistrate [Judge] erred in determining that Capano's reliance on the privacy interest analysis contained in the October 11, 1996 Magistrate's Report and Recommendation was misplaced. The Magistrate [Judge] erroneously found that Capano's privacy interests did not equate with the privacy interests under the Fourth Amendment, and that Capano does not have a legitimate expectation of privacy as to the sealed affidavits.

6) The Magistrate [Judge] erred in failing to hold an in camera hearing on the issues, and hastened to schedule a hearing without properly considering the issues and interests concerned.

7) The Court ultimately erred in unsealing the search warrant affidavits.

(D.I. 32 at 2–3) The court reviews the Magistrate Judge's order *de novo.*

With respect to those objections relating to the conduct of the October 30, 1996 hearing, the court finds them to be without merit, as Mr. Capano withdrew his motion to seal. In any event, the issues raised by these objections are moot and not likely to be repeated.

■ With respect to the remainder of the objections, the court understands Mr. Capano's argument to be that he is entitled, based upon his privacy and reputational interests, to preview the sealed affidavits. Therefore, his asserted right of access is not subject to any balancing test (i.e., his right of access is a "separate" issue from the media's right of access) and the media should not even be a party to his motion. The court disagrees.[8] Under the common law,

> the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents ... American decisions generally do not condition enforcement of this right on a proprietary interest in the document or upon a need for it as evidence in a lawsuit. The interest necessary to support the issuance of a writ compelling access has been found, for example, in the citizen's desire to keep a watchful eye on the workings of public

agencies, ... and in a newspaper publisher's intention to publish information concerning the operation of government....

*Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597–98, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570 (1978) (citations omitted). The common law qualified right of access has been found to apply to search warrant affidavits following execution of the warrant. *Baltimore Sun Co. v. Goetz,* 886 F.2d 60, 64 (4th Cir.1989). The existence of a "strong presumption of public access" may nevertheless give way to the "reputational and privacy interests of third parties." *United States v. Smith,* 776 F.2d 1104, 1110, 1113 (3d Cir. 1985). As explained by the Supreme Court in *Nixon,*

> [e]very court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes. For example, the common-law right of inspection has bowed before the power of a court to insure that its records are not "used to gratify private spite or promote public scandal" through the publication of "the painful and sometimes disgusting details of a divorce case." ... Similarly, courts have refused to permit their files to serve as reservoirs of libelous statements for press consumption....
>
> [T]he decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case.

435 U.S. at 598–99, 98 S.Ct. at 1312–13 (citations omitted). The scales of justice start out tipped in favor of public disclosure due to the strong presumption of openness recognized at common law. A party advocating nondisclosure (whether it be the government or a private citizen, in an *ex parte* proceeding or otherwise) can prevail only if sufficient facts and circumstances are presented that more than counterbalance the analytical scale. Consequently, regardless of whether the media is a "party" to this dispute,[9] the presumption in favor of public access to judi-

---

**8.** The court will address the merits of Mr. Capano's motion to produce. Consistent with the reasoning *infra,* the court will deny the motion on its merits, rather than find the motion "mooted" by that of the government to unseal.

**9.** The Supreme Court has recognized that "the press serves as the information-gathering agent

cial records[10] still obtains and the court's task is the same—weighing the interests advanced by the party advocating nondisclosure against the presumption of openness in light of the relevant facts and circumstances of the particular case.

Mr. Capano generally asserts as his reputational and privacy interests those identified by the Magistrate Judge in her October 11, 1996 Report. In support of these assertions, he relies upon three reported decisions. As noted above, the Third Circuit in *Smith* "recognized ... that reputational interests may **outweigh** the public's common law right of access." 776 F.2d at 1113 (emphasis added). The Ninth Circuit in *Times Mirror Co. v. United States*, 873 F.2d 1210 (9th Cir.1989), held generally "that members of the public have no [First Amendment] right of access to search warrant materials while a pre-indictment investigation is under way." *Id.* at 1211. The court based its holding on the government's interest in maintaining the integrity of a criminal investigation, opining in this regard that "public access would hinder, rather than facilitate, the warrant process and the government's ability to conduct criminal investigations." *Id.* at 1215. Also mentioned, but only as a factor reinforcing its previous holding, was "the privacy interests of the individuals identified in the warrants and supporting affidavits." *Id.* at 1216. No specific facts were presented for the court's consideration in balancing the presumption of public access versus the need for nondisclosure.

The only Fourth Amendment case cited by Mr. Capano is that of *United States v. Hubbard*, 650 F.2d 293 (D.C.Cir.1980), a case in which the court allowed the Church of Scientology of California to intervene in a criminal proceeding[11] in order to retrieve, prior to public disclosure, documents seized by the government. In its decision, the court first recognized "this country's common law tradition of public access to records of a judicial proceeding." *Id.* at 314. The court went on to reiterate that " 'the decision as to access [to judicial records] is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case.' " *Id.* at 316–17, citing *Nixon*, 435 U.S. at 599, 98 S.Ct. at 1313. The court then weighed the interests for and against public access. Counterbalanced against "the always strong presumption in favor of public access to judicial proceedings," *id.* at 317, were several factors, including: (1) Whether there had been previous public access to the documents; (2) Whether the documents had been judicially determined to be relevant to the crimes charged; and (3) The nature of the documents, i.e., whether they "reveal[ed] the intimate details of individual lives, sexual or otherwise, whether or not they concern[ed] 'innocent third parties.' " *Id.* at 324. In *Hubbard*, the court concluded that the documents which had been seized from the Church had never been publicly accessible, had never been judicially determined to be relevant to the crimes charged, and discussed such matters as the "sex lives of members of the Church, tax returns of individuals, and attorney-client material of law firms." *Id.* at 323. Under these circumstances, the court remanded the case to the trial court to review its decision to unseal the documents.

All of these cases support the general proposition that the court must undertake a balancing test whenever public access to judicial documents is restricted. In *Hubbard* (the only reported case analyzing specific facts), the focus of the analysis was on the retrieval of a party's private property (documents) which contained allegedly private information either created by or given to that party. By contrast, the sealed materials in the case at bar primarily recite information from third parties. The court finds that Mr. Capano does not have any legitimate expectations of privacy in such materials. The fact that the information has never been in the

---

of the public ..." *Nixon*, 435 U.S. at 609, 98 S.Ct. at 1318.

**10.** The presumption in favor of public access to judicial records has been recognized as necessary to "keep a watchful eye on the workings of

public agencies," as well as on "the operation of government." *Nixon*, 435 U.S. at 598–99, 98 S.Ct. at 1312.

**11.** The individual defendants had accepted plea bargains but had not yet formally entered their guilty pleas.

exclusive hands of either the government or Mr. Capano and, as related by the Magistrate Judge, to a great extent is already in the public domain, weighs against Mr. Capano's interests. The court, through the Magistrate Judge, has already determined that the information contained in the warrants is relevant to the investigation. Finally, although the sealed materials contain information relating to Mr. Capano's personal life, the information is not of such an intimate nature that would justify access restrictions. *Cf. United States v. Mitchell,* 551 F.2d 1252, 1263–64 (D.C.Cir.1976), *rev'd on other grounds sub nom. Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978).

## IV. CONCLUSION

For the above reasons, the court concludes that the scale remains tipped in favor of allowing public access. Having so determined, the objections filed by Mr. Capano to the November 1, 1996 order of the Magistrate Judge are rejected and the order is affirmed.

### ORDER

At Wilmington this 13th day of December, 1996, for the reasons stated in the Memorandum Opinion issued this date;

IT IS ORDERED that:

1. The Magistrate Judge's order is affirmed, except that Mr. Capano's motion to produce is denied on the merits.

2. This order shall be stayed 10 business days, consistent with Fed.R.App.P. 4(b).