**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re: COPLEY PRESS, INC.,
          *Intervenor-appellee.*

———————————————

UNITED STATES OF AMERICA,
          *Plaintiff-Appellant,*

                    v.

ISMAEL HIGUERA-GUERRERO,
                    *Defendant.*

No. 07-72143

D.C. No.
CR-97-02520-LAB

OPINION

Appeal from the United States District Court
for the Southern District of California
Larry A. Burns, District Judge, Presiding

Argued and Submitted
August 6, 2007—Pasadena, California

Filed March 4, 2008

Before: Alex Kozinski, Chief Judge, Dorothy W. Nelson and
Johnnie B. Rawlinson, Circuit Judges.

Opinion by Chief Judge Kozinski

**COUNSEL**

Vijay Shanker, Attorney, U.S. Department of Justice, Washington, DC; Karen P. Hewitt, U.S. Attorney and Laura E. Duffy, Assistant U.S. Attorney, Los Angeles, California, for the plaintiff-appellant.

Guylyn R. Cummins, Harold W. Fuson, Jr., Judith L. Fanshaw and Scott A. Wahrenbrock, Sheppard, Mullin, Richter & Hampton LLP, San Diego, California, for the intervenor-appellee.

**OPINION**

KOZINSKI, Chief Judge:

We consider the district court's order unsealing the transcript of a plea colloquy, a plea agreement's "cooperation

addendum" and the documents supporting a motion to seal the plea proceedings.

## Facts

Ismael Higuera-Guerrero ran a drug cartel in Mexico along with Javier Arrellano-Felix and Arturo Villareal-Heredia. After U.S. authorities captured the three men, Higuera-Guerrero agreed to plead guilty and to cooperate with the government, but the others, initially, declined.[1] The government and Higuera-Guerrero signed a plea agreement containing a "cooperation addendum" in which Higuera-Guerrero pledged to help the government build its case against the cartel. The government filed the plea agreement with the district court, along with a motion to seal the plea "proceedings." The government argued that publicizing Higuera-Guerrero's plea would endanger him and others. Higuera-Guerrero joined the government's motion to seal.

The district court granted the government's motion to seal while the government took steps to reduce the danger to Higuera-Guerrero and others. After those steps were taken, the district court unsealed a redacted transcript of the plea colloquy and all of the plea agreement except the cooperation addendum. This got the attention of Copley Press, Inc., which intervened and asked that the court unseal all the other documents the government had filed in support of its motion to seal, and the transcripts of the hearings on that motion. The district court ordered everything unsealed except the names, birthdates and addresses of the endangered people, but stayed its order while the government sought review. Higuera-Guerrero's former partners join Copley Press in opposing the government's petition, but do not claim that sealing the documents has impeded their defense.

---

[1]After we heard oral argument, Higuera-Guerrero's former partners pled guilty.

## Jurisdiction

Under the collateral order doctrine, we have jurisdiction over a "narrow class of decisions that do not terminate the litigation, but must, in the interest of achieving a healthy legal system, nonetheless be treated as final." *Digital Equip. Corp.* v. *Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994) (internal quotation marks and citation omitted). In order to satisfy this exacting standard, an order must "[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand* v. *Livesay*, 437 U.S. 463, 468 (1978) (bracketed numbers added). All three *Coopers & Lybrand* factors are present here.

Secrecy is a one-way street: Once information is published, it cannot be made secret again. An order to unseal thus "conclusively determine[s]" that the information will be public. *Id.* For the same reason, such an order is "effectively unreviewable on appeal from a final judgment." *Id.* This case is distinguishable from *United States* v. *Hickey*, 185 F.3d 1064 (9th Cir. 1999), where we concluded that we lacked jurisdiction to hear the government's appeal of an order sealing defendants' financial affidavits. That order did not conclusively determine the affidavits' secrecy because the government could file a renewed motion to unseal after the trial was over. *Id.* at 1067.

Whether the documents are unsealed is an issue "completely separate" from the government's criminal case against Higuera-Guerrero. *Coopers & Lybrand*, 437 U.S. at 468. The order to unseal won't affect Higuera-Guerrero's defense because he's already pled guilty and, in any event, joined the motion to seal. *United States* v. *Hitchcock*, 992 F.2d 236 (9th Cir. 1993) (per curiam), involved an order that was entwined with the merits: If defendants submitted the affidavits unsealed, the government could use them at trial. *Id.* at 238. Therefore, the district court's order wasn't completely sepa-

rate from the merits and would have been reviewable on appeal from a final judgment of conviction. *Id.*

While the government brought this case as a petition for a writ of mandamus, we conclude that we have jurisdiction under the collateral order doctrine, and so will treat this case as an appeal under 28 U.S.C. § 1291. The clerk is directed to alter the docket accordingly.

### Merits

We must first consider whether the First Amendment gives the public a right to access these documents. If we answer in the affirmative as to any of the documents in question, we must then determine whether any such right is overcome by a compelling governmental interest. Finally, we consider whether the common law gives the public a right of access separate from the First Amendment.

[1] **1.a.**　Our case law gives the public a qualified First Amendment right to access three types of documents at issue here: (1) the cooperation addendum to Higuera-Guerrero's plea agreement, Appendix to Petition for a Writ of Mandamus ("App.") tab E; (2) the government's motion, and the memoranda filed in support of it, to seal the plea agreement, App. tab A, p.1; tab B; tab H pp.1-3; tab L, and (3) the district court's orders granting the government's motion, App. tab C; tab I. *Oregonian Publ'ng Co.* v. *U.S. Dist. Court*, 920 F.2d 1462, 1464 (9th Cir. 1990). As to these documents, the only question is whether the right to access is overcome by a compelling governmental interest, a question we consider below. *See*  pp.2011-2012 *infra*.

[2] **b.** We have not yet decided whether the public has a First Amendment right to access a plea colloquy transcript. To answer that question, we consider both "historical experience" and "logic," *Times Mirror Co.* v. *United States*, 873 F.2d 1210, 1213 (9th Cir. 1989), though logic alone, even without

experience, may be enough to establish the right. *See Seattle Times Co.* v. *U.S. Dist. Court*, 845 F.2d 1513, 1516, 1517 (9th Cir. 1988) (even without an "unbroken history of public access," the First Amendment right exists if "public scrutiny" would "benefit" the proceedings); *see also Phoenix Newspapers, Inc.* v. *U.S. Dist. Court*, 156 F.3d 940, 948 (9th Cir. 1998) ("Even if the historic right of . . . access were not dispositive, the 'logic' prong of the [test] would be.").**²**

**[3]** Every circuit to consider the issue has concluded that logic favors public access to plea colloquy transcripts. *See United States* v. *Danovaro*, 877 F.2d 583, 589 (7th Cir. 1989); *In re Washington Post Co.*, 807 F.2d 383, 390 (4th Cir. 1986); *see also Washington Post* v. *Robinson*, 935 F.2d 282, 288 (D.C. Cir. 1991) (right of access to "plea agreements and related documents"); *United States* v. *Haller*, 837 F.2d 84, 86-87 (2d Cir. 1988) (right of access to "plea hearings"). "Public access to [plea colloquy transcripts] reveals the basis on which society imposes punishment," *Danovaro*, 877 F.2d at 589, and also "serves the important function of discouraging either the prosecutor or the court from engaging in arbitrary or wrongful conduct," *In re Washington Post*, 807 F.2d at 389; *see also Haller*, 837 F.2d at 87. Moreover, the Supreme Court has held that the public is entitled to attend criminal trials, *Globe Newspaper Co.* v. *Superior Court*, 457 U.S. 596, 605-06 (1982), so it stands to reason that plea colloquies, which "serve[ ] as a substitute for a trial," should also be open to the public. *In re Washington Post*, 807 F.2d at 389; *see Oregonian*, 920 F.2d at 1465 (this reasoning supports the public's right to access plea agreements). We agree with the other circuits to consider the matter that the public has a qual-

---

**²**Though our cases refer to this as the "experience and logic" test, it's clear that these are not separate prongs to be weighed against each other. Where access has traditionally been granted to the public without serious adverse consequences, logic necessarily follows. It is only where access has traditionally not been granted that we look to logic. If logic favors disclosure in such circumstances, it is necessarily dispositive.

ified First Amendment right to access Higuera-Guerrero's plea colloquy transcript. App. tab F from p.11, line 19 to end. We consider below whether this right is overcome by a compelling governmental interest. *See* pp.2011-12 *infra*.

**[4] c.**   Also at issue here are the transcripts of three hearings on the government's motion to seal. App. tab F from p.1 to p.11, line 18; tab K; tab N. We have not yet decided whether the public has a First Amendment right to access such transcripts, so we again apply the experience and logic test. *See* pp.2007-2009 *supra*.

**[5]** There's no historical experience of public access to these hearings or to their transcripts because the hearings didn't exist until quite recently. They were invented twenty-five years ago in *United States* v. *Brooklier*, 685 F.2d 1162, 1167-68 (9th Cir. 1982), as part of our circuit's procedure for sealing criminal proceedings. *See Oregonian*, 920 F.2d at 1466 (to seal a plea agreement, the district court must follow the procedure set forth in *Brooklier*).**[3]** Because the hearings are "entirely novel," we have no historical experience of public access to them. *United States* v. *El-Sayegh*, 131 F.3d 158, 161 (D.C. Cir. 1997).

**[6]** Even without historical experience, logic requires that at least *part* of these hearings be open to the public, because one of their purposes is to give the public an opportunity to be heard. *See Phoenix Newspapers*, 156 F.3d at 949 (the hearings give the "public and press" an "opportunity to object or offer alternatives" to closure); *see also United States* v. *Biagon*, No. 06-10479, slip op. at 16437, 16444 (9th Cir. Dec. 17, 2007) (procedure to close defendant's allocution). If the public has a right to attend the hearings, it necessarily follows that it is entitled to read the transcript of those parts of the proceeding that were public. *See Press-Enterprise Co.* v. *Supe-*

---

**[3]**We do not address whether the district court here complied with these procedural requirements because the parties haven't briefed the issue.

*rior Court* (*Press-Enterprise II*), 478 U.S. 1, 12-13 (1986). We conclude, therefore, that the public has a qualified right to read the transcripts of those portions of the hearings on the motion to seal that were open to the public. App. tab F from p.1 to p.7, line 14; tab N from p.1 to p.6, line 17; tab N from p.15, line 4 to end. We consider below whether this right is overcome by a compelling governmental interest. *See* pp.2011-2012 *infra*.

**[7]** But the public doesn't have the right to attend such hearings in their entirety. Here, for instance, the district court quite sensibly closed portions of the hearings so it could hear in private the government's explanation of how unsealing the plea would endanger Higuera-Guerrero and others. It would be highly illogical to give the public a right to read the transcripts of these portions of the hearings. The transcripts will inevitably contain not only the facts the parties hope to keep secret, but also their reasons for doing so, which are likely to be just as private as the facts at issue. It's rarely possible to justify one secret without telling other secrets. So by publishing these transcripts, we would force litigants to take a great risk: If they move to seal and lose, they make public all the additional secrets they have revealed to us in making a case for sealing the proceedings.

**[8]** Opening these transcripts to the public would handicap prosecutors in particular. To convince us to close a criminal proceeding, prosecutors often must tell us about ongoing investigations. That information is extremely sensitive, as we have recognized in holding that the public is not entitled to read, prior to indictment, affidavits supporting search warrants. *Times Mirror*, 873 F.2d at 1213. Openness here would likewise "frustrate criminal investigations and thereby jeopardize the integrity of the search for truth that is so critical to the fair administration of justice." *Id.* What's more, disclosure of this type of information would limit the ability of prosecutors to offer plea bargains to cooperating witnesses who reasonably fear retaliation from those they inform against. If the

reasons for sealing pleas were presumptively public, prosecutors couldn't promise confidentiality in exchange for cooperation.

**[9]** We conclude that the public has no First Amendment right to access the transcripts of the closed portions of the hearings on the motions to seal. App. tab F from p.7, line 15 to p.11, line 18; tab K; tab N from p.6, line 18 to p.15, line 4.

**[10]  d.**   The last group of documents at issue here are the declarations and documentation appended to the government's motion to seal and to the memoranda supporting that motion.[4] Our analysis of these documents is the same as our analysis of the closed portions of the hearings. *See* pp.2010-2011 *supra*. There is no historical experience of access to such documents, and logic militates against granting such access. *Id.* The public therefore has no First Amendment right to read them.

**2.**   To sum up: The public has a qualified right to access the plea agreement's cooperation addendum, *see* p.2007 *supra*, the government's motion to seal and the memoranda supporting it, *see id.*, the district court's orders granting the government's request, *see id.*, the transcript of Higuera-Guerrero's plea colloquy, *see* pp.2007-2009 *supra*, and the transcripts of those portions of the hearings on the motion to seal that were open to the public, *see* pp.2009-2010 *supra*. This qualified right can be overcome if "(1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be

---

[4]These are the declarations and documentation appended to the government's March 16 motion to seal, App. tab A from p.2 to end; the declarations appended to the government's April 13 motion to extend the sealing order, App. tab H from p.4 to end; and the entirety of the government's letter of April 23 requesting redactions to the unsealed version of the plea colloquy transcript, App. tab J.

harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest." *Oregonian*, 920 F.2d at 1466. Here, the district court at first found that the government's interest in the safety of Higuera-Guerrero and others was compelling; at the time, closure was the only way to protect them. Later, after the government took steps to reduce the danger, the district court found that "compelling reasons no longer exist[ed]" for sealing these documents and ordered them unsealed. We review that order for abuse of discretion. *Pintos* v. *Pac. Creditors Ass'n*, 504 F.3d 792, 802 (9th Cir. 2007).

[11] The district court did not abuse its discretion in unsealing those parts of the documents that describe Higuera-Guerrero's cooperation. Though the government's interest in keeping Higuera-Guerrero and others safe is "compelling," *Oregonian* also requires the government to show a "substantial probability that, in the absence of closure, this compelling interest would be harmed." *Oregonian*, 920 F.2d at 1466. The district court found that after the government took steps to ensure these persons' safety, there was no longer a substantial probability that revealing Higuera-Guerrero's cooperation would endanger them. The court didn't clearly err in so finding and, in light of that finding, its decision to unseal these portions of the documents was not an abuse of discretion.

[12] The district court did abuse its discretion, however, in unsealing those parts of the documents that concern the other people in danger. As we explain in a sealed addendum to this opinion,[5] there remains a substantial probability that unsealing the information contained therein will endanger these people. The district court clearly erred in finding otherwise, and we remand for it to allow the government to redact these documents in accordance with the sealed addendum.

---

[5]The sealed addendum will be made available to the government, to the district court, to our colleagues on this court and to the Supreme Court, should it choose to review our opinion.

**3.**    In addition to the public's First Amendment right, the public also has a "common-law" right "to inspect and copy public records and documents," including the documents at issue here. *Nixon* v. *Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). However, this right "is not absolute," *id.* at 598, and doesn't apply to "documents which have traditionally been kept secret for important policy reasons." *Times Mirror*, 873 F.2d at 1219.

As discussed above, there are good reasons to keep secret the documents filed in connection with motions to seal.[6] *See* pp.2010-2011 *supra*. We agree with the D.C. Circuit that "affording public scrutiny" to such documents "is logically incompatible with the nature of the proceedings," and we join that circuit in holding that the public has no common-law right to read the documents filed in connection with a motion to seal. *El-Sayegh*, 131 F.3d at 162.

We need not consider whether the common law gives the public a right to access the remaining documents because, even if it does, the government's interest in the safety of Higuera-Guerrero and others is "sufficiently important" to overcome the common-law "presumption in favor of access." *San Jose Mercury News, Inc.* v. *U.S. Dist. Court*, 187 F.3d 1096, 1102 (9th Cir. 1999).

\*    \*    \*

The public has no right to access the declarations and documentation appended to the government's March 16 motion to seal, App. tab A from p.2 to end; the declarations appended to the government's April 13 motion to extend the sealing order, App. tab H from p.4 to end; the government's letter of

---

[6]We refer here to the transcripts of the closed portions of the hearings on the motions to seal, *see* p.2010 *supra*, and to the declarations and documentation appended to the government's motion to seal and to the memoranda supporting that motion, *see* p.2011 *supra*.

April 23, requesting redactions to the plea colloquy transcript, App. tab J; and the transcripts of the closed portions of the hearings on the motion to seal, App. tab F from p.7, line 15 to p.11, line 18; tab K; tab N from p.6, line 18 to p.15, line 4. We vacate the district court's order unsealing these documents, and we instruct the district court to maintain them under seal.

The public does have a First Amendment right to access the cooperation addendum to Higuera-Guerrero's plea agreement, the unredacted transcript of Higuera-Guerrero's plea colloquy, the transcripts of the public portions of the hearings on the motions to seal and the government's sealed May 21 memorandum. Though this right can be overcome by a compelling interest in some circumstances, the district court did not abuse its discretion in unsealing the portions of these documents that describe Higuera-Guerrero's cooperation. However, the district court did abuse its discretion in unsealing those portions that describe the other people in danger.

**AFFIRMED in part, VACATED in part and REMANDED. DOCKET AMENDED.**