Eutiquio Acevedo MENDEZ,
et. al., Plaintiffs,

v.

The CITY OF GARDENA,
et. al., Defendants.

CASE NO. 2:13–cv–09042–SVW–AJW

United States District Court,
C.D. California.

Signed 07/14/2015

Kathleen Leslie Crouch, Mark R. Pachowicz, Law Offices of Mark Pachowicz APLC, Camarillo, CA, Richard Samuel Paz, Law Offices of R. Samuel Paz, Sonia M. Mercado, Sonia Mercado and Associates, Culver City, CA, for Plaintiffs.

Esther P. Holm, Lewis Brisbois Bisgaard and Smith LLP, Costa Mesa, CA, Mildred K O'Linn, Summer L Bridges, Angela Marie Powell, Scott Wm. Davenport, Manning and Kass Ellrod Ramirez Trester LLP, Los Angeles, CA, Ingrid Justine Grubb, Lewis Brisbois Bisgaard and Smith LLP, Costa Mesa, CA, for Defendants.

Daniel A. Laidman, Esquire, Kelli L. Sager, Esquire, Attorney, Rochelle Lyn Wilcox, Esquire, Partner, Davis Wright Tremaine LLP, Los Angeles, CA, for Intervenors-Appellees Los Angeles Times Communications LLC, The Associated Press, Bloomberg LP.

## ORDER GRANTING NON–PARTY MEDIA ORGANIZATIONS' MOTION TO INTERVENE AND UNSEAL DOCUMENTS

STEPHEN V. WILSON, United States District Judge

## I. INTRODUCTION

Tins civil rights action arose when police officers' detention of suspected bicycle thieves turned into a shooting spree—resulting in several injuries and the death of one plaintiff.

Presently before the Court is a motion filed by non-party media organizations Los Angeles Times Communications LLC, The Associated Press, and Bloomberg, L.P. (collectively, "Media Organizations") to intervene for the limited purpose of requesting the unsealing of video footage submitted by the parties in connection with a motion for summary judgment. (Dkt. 248.) The Media Organizations move to unseal the subject video footage on First Amendment grounds, asserting the public's interest in accessing this footage.

The motion at bar requires the Court to decide whether to unseal video footage taken by police officers' car cameras—thus granting non-party media organizations and the public access to footage of the shooting and surrounding events. This issue arises against a backdrop of tension and heightened scrutiny in the wake of several widely publicized and controversial uses of force by the police. There is currently an intense public debate about police officers' use of force and public oversight thereof. The Court is sensitive to the valid concerns raised by both sides of this debate. Nevertheless, it is not the function of the judiciary to decide political issues. Instead, this Court is bound to apply the laws enacted by the legislature and expounded by the higher Courts. As discussed below, while the political issues may be murky, the law here is clear. For the reasons discussed below, the Court GRANTS the Media Organizations' motion to intervene and unseal the video footage.

## II. BACKGROUND

### A. Facts[1]

According to Plaintiffs: On June 2, 2013, Agustin DeJesus Reynoso's ("Reynoso")

bicycle was stolen from a CVS Store. (Dkt. 214: Pls.' Opp., 2.) A security guard called 911 and reported that a customer's bicycle had been stolen by two men. (*Id.* at 3.) Reynoso called his brother, plaintiff Zeferino, either to see if he had taken the bicycle or to tell him it was stolen. (*Id.*) Reynoso waited at the CVS for the police to respond while Zeferino, Mendez, and Amado returned home—Mendez and Amado on their bicycles, with Zeferino behind them on foot. (*Id.*)

Cuff encountered Mendez and Amado on Redondo Beach Boulevard. (*Id.* at 3–4.) Cuff detained Mendez and Amado. (*Id.* at 4–5.) Zeferino approached the group while Cuff detained Mendez and Amado. (*Id.*) Plaintiffs claim that Zeferino told Cuff that Mendez and Amado were not the "right guys." (*Id.* at 5.)

Two more police cars, carrying Officers Mendez, Toda, and Sanderson, pulled up to the scene. (*Id.*) The three officers emerged from their cars, and each officer pointed his gun at the three Plaintiffs. (*Id.*) Plaintiffs allege that Mendez and Amado were standing with their hands over their head when police officers opened fire. (*Id.* at 6.) They further allege that Zeferino was holding his hat in one hand and was displaying the open palm of his other hand when police fired. (*Id.* at 7–8.) Three of the four police officers on the scene (all except Cuff) fired their weapons. (*Id.*) Plaintiffs assert that the shooting was unjustified and wrongful. Both Zeferino and Mendez sustained gunshot wounds. (*Id.* at 1–2.) Zeferino ultimately died from his wounds. (*Id.* at 1.)

According to Defendants: When the CVS security guard called 911, the dis-

---

1. The Court here recites the parties' versions of the facts, as recounted in their briefs regarding Defendants' motion for summary judgment, solely to provide context. This Court does not here engage in factfinding.

patch operator issued a three alert tone followed by a dispatch to Cuff of a robbery that had occurred 15 minutes prior. (Dkt. 152: Defs.' Mem. P. & A., at 1.) The three alert tone purportedly indicated that a high priority call was in progress that needed immediate attention. (*Id.*) Cuff claims that he responded to the dispatch and almost immediately saw two men traveling on bicycles on the same direction on the same road that the dispatch said the suspects were last seen traveling. (*Id.* at 1–2.) Cuff asserts that he detained Mendez and Amado, re-entered his car to turn on his video recorder and lights, and then heard Dispatch give a physical description of the suspects (which was somewhat consistent with Mendez and Amado). (*Id.* at 2.) Cuff told Dispatch that he had the suspects, and emerged from his vehicle with his gun drawn. (*Id.*)

Defendants allege that Cuff gave Amado and Mendez instructions in Spanish and English, but that the two men were only partially compliant. (*Id.*) Defendants assert that Zeferino approached the group within 90 seconds of Cuff detaining Amado and Mendez, and that Zeferino failed to comply with Cuff's orders to raise his hands. (*Id.* at 2–3.) Defendants assert that the other three officers arrived on the scene 60–90 seconds thereafter. (*Id.* at 3.) The officers assert that Zeferino refused to comply with orders to raise his hands and took two "threatening" steps toward Cuff. (*Id.* at 3.) They claim that Zeferino removed his hat from his head and swung his right hand to his waist, causing them each to fear for their safety and thus to fire their weapons at Zeferino. (*Id.* at 3–4.) They assert that Mendez was shot accidentally. (*Id.* at 3.)

## B. Procedural History

On August 7, 2014, plaintiffs Eutiquio Acevedo Mendez ("Mendez"), Ricardo Diaz Zeferino ("Zeferino"), Jose Amado Garcia ("Garcia"), Juan Jesus Diaz ("Diaz"), and Bonifacia M. Zeferino ("Bonifacia") filed their First Amended Complaint ("FAC") against defendants City of Gardena, Gardena Police Department ("GPD"), Chief Edward Medrano ("Medrano"), Sgt. Christopher Calvin Cuff ("Cuff"), Officer Christopher Anthony Mendez, Officer Christopher Andrew Sanderson ("Sanderson"), and Matthew Steven–Fong Toda ("Toda"). (Dkt. 1.) The FAC asserts claims for (1) excessive force in violation of 42 U.S.C. § 1983; (2) "Supervisor Liability Causing Constitutional Violations"; (3) unconstitutional "Custom, Policy or Practice" in violation of § 1983; (4) "Assault, Battery and Wrongful Death"; (5) "False Arrest/False Imprisonment"; (6) negligence; and (7) violation of California Constitution Article 1, Section 13. (Dkt. 58.)

Discovery disputes arose early in this case and were extensively litigated. On February 17, 2014, Defendants sent Plaintiffs a proposed joint stipulation to stay proceedings pending completion of the Los Angeles Count District Attorney's Investigation. *See* (Dkt. 20–1: Joint Stipulation, at 5.) On February 21, 2014, Defendants represented that when they produced the "homicide book," they would seek a protective order because some of the documents therein were confidential. (*Id.*) Defendants suggested that the parties work on a joint stipulation for a protective order. (*Id.*) Plaintiffs allegedly "did not agree that the documents are 'confidential,' nor did they agree to a blanket protective order," but nonetheless cooperated so as to obtain documents and information—including the shooting officers' identities. (*Id.* at 5–7.)

On March 5, 2014, the parties filed a joint status report in which Defendants requested a stay of discovery pending the Los Angeles County District Attorney's investigation of the matter. (Dkt. 17.) De-

fendants further asserted that Gardena hadn't then completed its internal affairs investigation of the incident and therefore that the pertinent documents were protected by federal and state law from disclosure. (*Id.*)

On April 5, 2014, Plaintiffs filed a "Notice of Motion and Joint Stipulation to Compel Defendants' Compliance with Rule 26(a)(1)(A) Initial Disclosures." (Dkt. 20.) Plaintiffs asserted that as of that date Defendants had refused to cooperate with discovery. This motion/joint stipulation was the subject of several rounds of supplemental briefing and filings.

On May 23, 2014, Plaintiffs applied for an order to show cause why a contempt citation should not issue for the Los Angeles Country Sheriff's Department ("LASD") and its custodian of records for failing to produce subpoenaed documents. (Dkt. 30.) Plaintiffs asserted that LASD failed to produce the homicide investigation report and other documents that LASD had purportedly released to the defendants who were the subject of the homicide investigation. (*Id.*)

On May 30, 2014, the Honorable Magistrate Judge Andrew J. Wistrich granted Plaintiffs' motion to compel Defendants' compliance with Rule 26(a)(1)(A) Initial Disclosures. (Dkt. 34.) The parties were also ordered to lodge either a joint proposed protective order or, if they could not agree, separate proposed protective orders. (*Id.*)

On June 13, 2014, the Magistrate Judge issued the parties' jointly stipulated protective order regarding the homicide book. (Dkt. 44.) The protective order stated that the homicide book was "part of an ongoing criminal investigation that is confidential official information." (*Id.* at ¶ 1.) The protective order also provided that it was entered without prejudice to any party's right to seek an order removing the confidential designation from any documents. (*Id.* at ¶ 10.) It further provided that the parties' obligations under the protective order would survive the case's final termination—including by settlement—and that counsel would return all confidential information upon the case's termination. (*Id.* at ¶¶ 17–18.)

On July 10, 2014, Plaintiffs filed an *ex parte* application to have the confidential designation removed from certain pieces of the homicide book—including the video footage of the incident taken from the involved officers' car cameras. (Dkt. 46.) On July 12, 2014, LASD filed a brief and declaration stating that the relevant homicide investigation had concluded. (Dkt. 49.)

On July 22, 2014, the Magistrate Judge issued an Order directing the parties to attempt to narrow the dispute regarding Plaintiffs' *ex parte* application in light of the news that the underlying homicide investigation had concluded. (Dkt. 52.) In response to this Order, on August 15, 2014, Defendants withdrew the confidential designation from written documents at issue in the case. (Dkt. 64: Defs.' Not., at 2.) However, Defendants maintained the confidentiality designation as to photos, video, and audiotapes depicting the incident, any police officers or percipient witnesses, the decedent or bloody evidence, and audio or video records of officers' and witnesses' statements. (*Id.*)

The confidentiality of the police car videos was the subject of several further rounds of supplemental briefing and hearings. *See, e.g.* (Dkts. 118, 126, 128, 153.)

On January 30, 2015, Defendants moved for partial summary judgment as to Plaintiffs' § 1983 claims. (Dkt. 220.) In support of their motion, Defendants sought to file under seal copies of the disputed car camera video footage. (Dkt. 156.) In connection with their opposition to the motion for

summary judgment, Plaintiffs filed a notice of manual filing asserting that they were filing under seal the car camera footage and stills taken from that footage. (Dkt. 219.)

On February 5, 2015, the parties submitted further supplemental briefing regarding the confidentiality of the car camera videos. (Dkts. 187–89.)

On February 11, 2015, the Court issued an Order granting Defendants' application to file the video footage under seal.

On February 12, 2015, Plaintiffs applied *ex parte* for an order vacating or reconsidering the Order granting defendants' application to file the car camera footage under seal. (Dkt. 226.)

On February 17, 2015, Plaintiffs filed a notice of settlement informing the Court that they had reached a tentative settlement with Defendants. (Dkt. 231.)

On February 18, 2015, the Court denied Plaintiffs' *ex parte* application for an order vacating or reconsidering the Order granting defendants' application to file the car camera footage under seal. (Dkt. 232.)

On May 18, 2015, the parties voluntarily dismissed the case with prejudice as to all parties. (Dkt. 245.) As of the time of dismissal the Court had not ruled on Defendants' partial summary judgment motion. On June 8, 2015, the Media Organizations filed the instant motion to intervene in the case for the limited purpose of requesting the unsealing of the car camera footage. (Dkt. 248.)

### III. LEGAL STANDARD

▮ Courts have historically recognized a general right to inspect and copy judicial records and documents. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n. 7, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978)). The

Ninth Circuit recently recognized that "the right of access to public records and proceedings is 'necessary to the enjoyment' of the right to free speech." *Courthouse News Serv. v. Planet*, 750 F.3d 776, 786–87 (9th Cir. 2014) (quoting *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 604, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982)). It is thus protected by the First Amendment. *See id.* This right is rooted in citizens' interests in "keep[ing] a watchful eye on the workings of public agencies." *Kamakana*, 447 F.3d at 1178 (quoting *Nixon*, 435 U.S. at 598, 98 S.Ct. 1306). The media helps the public's vigilance by publishing information about the government's operation. *Id.*

▮ The Ninth Circuit has recognized the media's right to intervene to protect the public's right to access court records. *See San Jose Mercury News, Inc. v. U.S. Dist. Court–N. Dist. (San Jose)*, 187 F.3d 1096, 1103 (9th Cir. 1999). A nonparty may seek permissive intervention to challenge a protective order under Federal Rule of Civil Procedure 24(b)(2). *Id.* at 1100–01.

▮ A party seeking permissive intervention under Rule 24(b)(2) must show: "(1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *S.E.C. v. AOB Commerce, Inc.*, No. CV 07-4507 CAS JCX, 2013 WL 5405697, at *1 (C.D. Cal. Sept. 23, 2013) (quoting *San Jose Mercury News*, 187 F.3d at 1100).

▮ A court determining the timeliness of a motion to intervene must look to: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *San Jose Mercury News*, 187 F.3d at 1100–01 (quoting *League of United Latin Amer.*

*Citizens v. Wilson,* 131 F.3d 1297, 1302 (9th Cir.1997)). Courts measure the length of any delay in seeking intervention from "when the intervenor first became aware that its interests would no longer be adequately protected by the parties." *Id.* at 1101.

## IV. ANALYSIS

The Media Organizations seek to permissively intervene to move to unseal the car camera videos. Defendants, who have fought persistently to keep the car camera videos secret, oppose their request. Defendants challenge both the propriety of allowing intervention and the propriety of unsealing the documents. The Court addresses each issue in turn.

### A. Motion to Intervene

#### 1. Jurisdiction [2]

■ Defendants assert that this Court should decline to exercise jurisdiction over the intervenors' motion because it purportedly raises an issue under the California Public Records Act, which purportedly exempts from disclosure "investigative files." Defendants quixotically assert that this Court should remand this case, which was originally filed in this Court, to state court. Unsurprisingly, Defendants fail to cite to any case directly supporting their argument. To "remand" a case means "[t]o send [it] back to the court or tribunal from which it came for some further action." REMAND, Black's Law Dictionary (10th ed. 2014). Because this case originated before this Court, it can't be "remanded" back to state court. Moreover, even if the Court were to construe Defendants' argument as a request to transfer the case, the argument would still

fail because a federal court cannot transfer a case originally filed in federal court to state court. *See Wors v. Sling Med., Inc.,* No. 10-CV-0106-MJR, 2010 WL 1963201, at *3 (S.D. Ill. May 14, 2010).

Moreover, this Court had jurisdiction over the underlying action because it arose under federal law. 28 U.S.C. § 1331. Accordingly, federal rather than state law of privilege applies. *See Garrett v. City & Cnty. of San Francisco,* 818 F.2d 1515, 1519 n.6 (9th Cir. 1987) (rejecting argument that documents were protected by state-created privilege because federal common law of privilege controlled in a case arising under federal law).

■ Alternatively, Defendants' argument could be construed as a motion to abstain. However, Defendants fail to cite to any applicable abstention doctrine. Moreover, the Ninth Circuit recently rejected the argument that a federal district court should abstain from deciding whether a news service had a right to access certain state court records. *Courthouse News Servs.,* 750 F.3d at 783–93. The Court found that abstention would not be proper under either *O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974), or *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971, (1941). *Courthouse News Servs.,* 750 F.3d at 783–93. As in *Courthouse News Services,* the Media Organizations assert a "First Amendment right of access to judicial and other public proceedings." *Id.* at 784. "Though the government may sometimes withhold information without violating the expressive rights protected by the First Amendment, the First Amendment right of access to public pro-

---

**2.** Defendants do not contest that the Media Organizations' claim shares a common question of law or fact with the main action; nor could they—the Media Organizations seek to

pick up the torch from where Plaintiffs left it and to continue their pursuit to bring the car camera videos to light.

ceedings—where it applies—is inextricably intertwined with the First Amendment right of free speech." *Id.* at 785. Thus, as with other First Amendment claims, the Media Organizations' motion raises issues of "particular federal concern." *Id.* Nor is this a case with "exceptional factors" favoring abstention. *Id.* at 784. Therefore the typical rule that federal Courts should not invoke *Pullman* abstention in First Amendment cases applies. *Id.* at 785. Moreover, an order unsealing documents previously filed with this Court "poses little risk of an 'ongoing federal audit' or 'a major continuing intrusion of the equitable power of the federal courts into the daily conduct of state ... proceedings." *Id.* at 792 (alteration in original) (quoting *O'Shea,* 414 U.S. at 500, 502, 94 S.Ct. 669). Thus *O'Shea* abstention doesn't apply. *Id.*

For the aforementioned reasons, the Court has and should exercise jurisdiction over the Media Organizations' motion.

### 2. Timeliness

■ Defendants assert that the Media Organizations' motion is untimely. However, the Media Organizations' motion was filed less than four months after Plaintiffs filed a notice of settlement. Given Plaintiffs' consistent efforts to prevent the car camera footage from remaining sealed, the earliest point at which the Media Organizations first became aware that the parties' would no longer adequately protect their interests was when Plaintiffs filed their notice of settlement in February 2015. A four month delay is not particularly long, especially given that the case was still pending during three of those months. *See, e.g., Beckman Indus., Inc. v. Int'l Ins. Co.,* 966 F.2d 470, 476 (9th Cir. 1992) (affirming order permitting intervention two years after settlement).

While the case had already settled and been dismissed, this does not bar a finding of timeliness. Courts have found a motion to intervene timely even where a nonparty intervenes years after the litigation concluded to challenge a protective order. *See Blum v. Merrill Lynch Pierce Fenner & Smith Inc.,* 712 F.3d 1349, 1353 (9th Cir. 2013).

Moreover, there would be no prejudice to the parties by allowing intervention. The underlying case has settled and thus the Media Organizations' intervention would have little effect on the original parties' underlying rights. Additionally, Plaintiffs seek to join the intervenors' motion to unseal the videos, and thus clearly would not be prejudiced. Defendants' argument that they would be prejudiced because they relied on the protective order in settling the case is inapt. *Id.* at 1354. The Ninth Circuit has already considered and rejected this argument. *Id.* Moreover, reliance on a blanket protective order, such as the one at issue in this case, is less because it is inherently overinclusive. *Beckman,* 966 F.2d at 476.

For the aforementioned reasons, the Court FINDS the Media Organizations' motion timely.

### 3. Conclusion

The Media Organizations' motion to intervene is timely and shares a common legal or factual question with the underlying action. Moreover this Court has jurisdiction over the Media Organizations' request. The Court thus GRANTS the motion to intervene.

### B. Request to Unseal Videos

The Media Organizations argue that the videos should be unsealed because the blanket protective order contained no specific finding of a compelling reason to seal the videos and because the Court's Order granting Defendants' application to file the videos under seal was procedurally deficient because the Court failed to articulate

a basis for its ruling. As discussed below, the Court concludes that the videos should be unsealed.

### 1. Legal Standard

 The right to access judicial records is not absolute. *Kamakana*, 447 F.3d at 1178. A narrow class of documents is exempt from the public's right of access because these records have "traditionally been kept secret for important policy reasons." *Id.* (quoting *Times Mirror Co. v. United States*, 873 F.2d 1210, 1219 (9th Cir.1989)). Only grand jury transcripts and warrant materials in the midst of a pre-indictment investigation have been deemed such traditionally secret documents. *Id.*

 Unless a court record is one traditionally kept secret, courts begin from a strong presumption favoring access. *Id.* Thus a party seeking to seal a court record bears the burden of overcoming this strong presumption by meeting the "compelling reasons" standard. *Id.* (citing *Foltz v. State Farm Mutual Auto. Insurance Company*, 331 F.3d 1122, 1135 (9th Cir. 2003)). Because this strong presumption favoring access applies to dispositive pleadings, including motions for summary judgment and related attachments, the compelling reasons standard applies to motions to seal such documents. *Id.* at 1179.

 This standard requires a party to articulate "compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process." *Id.* at 1178–79 (internal quotations and citations omitted). The Court must "conscientiously balance[ ] the competing interests of the public and the party who seeks to keep certain judicial records secret." *Id.* at 1179 (internal quotation marks omitted) (citing *Foltz*, 331 F.3d at 1135). Generally, sufficiently com-

pelling reasons exist when "court files might have become a vehicle for improper purposes, such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id.* (internal quotation marks omitted) (quoting *Nixon*, 435 U.S. at 598, 98 S.Ct. 1306). "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Id.*; *see also Foltz*, 331 F.3d at 1136.

 In addition to finding the "compelling reasons" standard met, the Court must also meet certain procedural requirements before sealing court records. In order for a Court to seal court records, it must "articulate the factual basis for its ruling, without relying on hypothesis or conjecture" *Kamakana*, 447 F.3d at 1179 (quoting *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir.1995)).

### 2. Application

 The videos at issue in this case were sealed pursuant to a stipulated protective order with the understanding that the decision to seal the videos was still subject to challenge. Plaintiffs sought to have the videos filed on the public docket from very early in the litigation until they settled their claims. They stipulated to the protective order at issue against the backdrop of defendants' apparent refusal to provide even the names of the shooting officers during discovery. Even after the case has settled, Plaintiffs seek to join the Media Organizations' motion to intervene and unseal the videos.

 The Court's rationale for sealing the subject videos was the parties' stipulated protective order—entered against the backdrop of stalled litigation. However, the parties cannot contractually agree to

deprive the public of its strong First Amendment interest in accessing these videos, which were filed in connection with a dispositive motion. Defendants assert that the videos should remain sealed because they agreed to settle the case for $4.7 million—an amount above their liability insurance policy—specifically because they expected the protective order to continue and the videos to remain secret.

However, Defendants' argument backfires here—the fact that they spent the city's money, presumably derived from taxes, only strengthens the public's interest in seeing the videos. Moreover, Defendants cannot assert a valid compelling interest in sealing the videos to cover up any wrongdoing on their part or to shield themselves from embarrassment. The only valid privacy interest in this case belongs to the Plaintiffs, who have made abundantly clear that they wish the videos to be made available to the public. Moreover, while the videos are potentially upsetting and disturbing because of the events they depict, they are not overly gory or graphic in a way that would make them a vehicle for improper purposes.

Additionally, Defendants and *amici curiae* California State Sheriffs' Association, California Police Chiefs's Association, and the California Peace Officers' Association raise policy issues about how a decision to unseal the video footage could impact the debate over police use of body worn cameras. Nevertheless, this is a political issue not relevant to the legal considerations here at play.

### C. Request to Stay the Order Unsealing Videos

 Defendants ask the Court to briefly stay enforcement of any order un-

sealing the videos so they can have time to appeal. However, "[a] stay is not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009) (*quoting Virginian R. Co. v. United States*, 272 U.S. 658, 672, 47 S.Ct. 222, 71 L.Ed. 463 (1926)). Instead, the party seeking the stay bears the burden of showing that a stay is justified based on four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Id.* at 433–34, 129 S.Ct. 1749. Here Defendants do not even attempt to show that a stay is justified. Accordingly the Court DENIES Defendant's request to stay enforcement of this Order.

### V. ORDER

1. For the aforementioned reasons, the Court GRANTS the Media Organizations' motion and UNSEAL the video footage.[3]

2. For the aforementioned reasons, the Court DENIES Defendants' request to impose a short stay on the order unsealing the footage so they can appeal it to the Ninth Circuit.

**IT IS SO ORDERED.**

---

**3.** In light of the foregoing, the Court need not decide whether Plaintiffs may properly join

the Media Organizations' intervention.